UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                   CASE NO.   8:05-cr-447-T-23MAP
                                                              8:12-cv-517-T-23MAP

JARRETT CANNION
_____/

## O R D E R

Cannion's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for distribution of five or more grams of cocaine base and for conspiracy to possess with the intent to distribute fifty or more grams of cocaine base, for which he is imprisoned for 292 months.  An earlier order determines that the motion to vacate is timely.  (Doc 9)  Nevertheless, the motion to vacate lacks merit.

## FACTS[1]

During an investigation initiated by the Pasco County Sheriff's Office in November, 2004, a confidential informant ("CI") revealed that he or she could introduce an undercover detective ("UC") to crack cocaine sources named "Boo" and "Jee," later identified as Ronnie Broughton and Jarrett Cannion.

---

[1] This summary of the facts derives from the factual basis — facts which Cannion admitted are correct — iterated when Cannion pleaded guilty.  (Doc. 144 at 43-47).

The first distribution of crack cocaine occurred on November 18, 2004, when the CI arranged a meeting and introduced the UC to Broughton.  The UC purchased approximately 2.78 grams of crack cocaine from Broughton for $200.  The CI gave the UC telephone numbers to contact Broughton and Cannion for future crack cocaine purchases.

The second distribution of crack cocaine occurred in December, 2004, when the UC called one of the telephone numbers provided by the CI.  The UC and Cannion scheduled a December 16, 2004, meeting at which the UC purchased approximately 22 grams of crack cocaine from Cannion for $970.

The final distribution of crack cocaine was arranged for January 27, 2005.  As Broughton approached the UC's vehicle at the arranged location a marked patrol car stopped Broughton, who produced a Florida identification card.  As he attempted to flee, detectives grabbed Broughton by his jacket, which came off of him.  Inside the jacket the detective found approximately 55 grams of crack cocaine.  Broughton was apprehended approximately three hours later by a K-9 unit.  Cannion approached the arranged location during the encounter with Broughton.  Cannion turned his vehicle and fled.  A traffic stop of Cannion was attempted, but the pursuit was ceased after the chase reached an excessive speed.  Cannion was apprehended later.

Immediately before the district judge accepted his guilty plea, Cannion admitted that "he participated with Broughton and with other persons in an unlawful agreement to distribute 50 grams or more of crack cocaine."

**PROCEDURAL HISTORY**

Count Two of the indictment charged Cannion with the distribution of five grams or more of crack cocaine, for which he faced a potential sentence of from five years to forty years imprisonment.  Count Four of the indictment charged Cannion with the conspiracy to distribute fifty grams or more of crack cocaine, for which he faced a potential sentence of from ten years to life imprisonment.  However, two months before the scheduled trial the United States filed a "Notice of Prior Conviction" in which the United States represents "that upon conviction in this case, by reason of his prior felony drug convictions, the defendant is subject to increased punishment, including an enhancement of the applicable mandatory minimum and maximum terms of imprisonment, pursuant to 21 U.S.C. § 841(b)."  (Doc. 58)  As a consequence, (1) for Count Two Cannion's sentence increased from a minimum of five years to a mandatory minimum of ten years and the potential maximum sentence increased from forty years to life imprisonment, and (2) for Count Four Cannion's potential sentence increased from a minimum of ten years to a maximum of life imprisonment to a mandatory sentence of life imprisonment.  In other words, if convicted of Count Four, the only possible sentence Cannion could receive was life imprisonment.

On the morning of trial, Cannion decided to plead guilty.  Before accepting Cannion's plea of guilty, as the following examples demonstrate, the district judge

ensured that Cannion understood that he faced a mandatory sentence of life

imprisonment (Doc. 3, 5 - 7) :

> [I]t does appear to me that if you plead guilty to these charges because of past convictions that you have had and the nature of these offenses that the required sentence is one of life.
>
> . . . .
>
> I think that you should assume that if you do have those convictions that your mandatory sentence would be life.
>
> . . . .
>
> What it is important for me to tell you and to make sure you know is that you are looking at the possibility, probability, or maybe even certainty of a life sentence given this set of circumstances that the prosecutor assumed.
>
> [Y]ou must assume in deciding whether to plead guilty that you face a life sentence. I am not sentencing you to life today. The sentencing is on another day. If there are issues, we'll decide them then. For the purpose of deciding today whether to plead guilty, you have no choice but to assume that you will – that the penalty would be life, even though, if some unforeseen event occurs, perhaps, some other thing might occur. I can't foresee that. You should assume that your penalty will be life.
>
> . . . .
>
> [Because] this is an open plea of guilty without the benefit of a plea agreement[,] you should assume that it is a plea that will result in a sentence of life imprisonment.

However, the presentence report shows that Cannion had only one qualifying

prior drug conviction because the second drug conviction was not for a qualifying

offense.  As a consequence, at sentencing the United States withdrew the attempt to

sentence Cannion under 21 U.S.C. § 851.  (Transcript of Sentencing at 8-9, Doc. 113)

Instead, the United States moved for an upward departure of eight levels to account

for Cannion's extensive criminal history.  The following exchange (Transcript of

Sentencing at 6-8, Doc. 113) shows that Cannion's counsel offered no objection to

the upward departure.

> [PROSECUTOR]: So taken as a whole, it would be reasonable
> and within the Court's discretion under the advisory guideline
> system to upward depart and find him to be a career offender.
>
> THE COURT: Under 4A1.3?
>
> [DEFENSE COUNSEL]: Yes, Your Honor. There is a specific
> methodology for that outlined in the guidelines. Once one is in
> Criminal History Category VI, there is no more room to the
> right to move, so to speak, so the guidelines call for the Court to
> move down the table level by level and consider whether
> that appropriately recognizes his criminal history. I would
> submit that scoring him at a Level 38, VI as a career offender,
> given the number of convictions, the type of convictions would
> be warranted under the circumstances.
>
> THE COURT: All right. [W]hat says the defense. . . .
>
> [DEFENSE COUNSEL]: Regardless, Your Honor, of how Mr.
> Cannion is characterized whether or not as a career offender or
> not, there is no objection to the upward departure.
>
> THE COURT: There is no other objection from the United
> States?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> THE COURT: Just so the record is explicit on this, we're
> referring to the computational display in the presentence report.
> At least this would be an objection to Paragraph 29 in a sense
> that you think the adjusted offense level is inadequate at 30 and
> you are suggesting that it should be 38 to which the defense
> makes no objection. And then I take it you're contemplating
> that he receive his credit for acceptance of responsibility, that
> the defendant receive his credit for acceptance of responsibility,

and that would result in a total offense level under the United States' proposal of 35?

[PROSECUTOR]: Yes, Your Honor.

THE COURT: [Defense counsel], have you and Mr. Cannion had an opportunity together to review and evaluate the presentence report?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: [F]irst of all, is there any objection to the factual accuracy of the report?

[DEFENSE COUNSEL]: Your Honor, there were objections made to the presentence report. All those objections are hereby withdrawn.

THE COURT: Without any remaining objection from either side, the Court adopts the facts statement in the presentence report. Is there an objection to the proposed application of the Sentencing Guidelines? I think the way I will phrase this is to ask you first if there is any objection from the defense remaining to the proposal by the United States; in other words, that Paragraph 29 be adjusted to 38, less the three points for acceptance to net an adjusted offense level of 35?

[DEFENSE COUNSEL]: No objection, Your Honor.

THE COURT: Without objection from either side for the purpose of our advisory guideline calculation, the Court adopts the Offense Level of 35 and a Criminal History Category of VI.

Immediately after his counsel requested a sentence at the low end of the

guidelines, as increased by the upward departure, Cannion offered no objection to his

sentence when invited to respond (Transcript of Sentencing at 9-10, Doc. 113):

[DEFENSE COUNSEL]: Your Honor, what I would ask for in terms of – I am going to ask the Court for a low end sentence at 292 based on the Paragraphs 62 and 63, the abusive of history of his past, which indicates that Mr. Cannion had a very abusive childhood. That's all, Your Honor.

> THE COURT: I have of course read the presentence report at
> this point more than once. I am aware of the matters to which
> you refer. Mr. Cannion, as you know, you have an opportunity
> this morning to speak also with respect to your sentence and
> these offenses. You're not required to say a thing, of course. If
> you would like to say something, I would be happy to hear
> from you now.

> THE DEFENDANT: I'm fine.

Having knowingly and voluntarily pleaded guilty with the expectation of a mandatory sentence of life imprisonment and while still facing a potential life sentence under Section 841(b)(1)(A) because he has one prior qualifying drug conviction, Cannion was sentenced to 292 months, which is the low end of the applicable guideline range. The circuit court affirmed the sentence. (Doc. 130)[2]

## MOTION TO VACATE UNDER SECTION 2255

The motion to vacate asserts fives grounds. Each ground challenges the upward departure at sentencing, either as the district court's error or as counsel's ineffective assistance. Each ground lacks merit.

In ground one Cannion complains that before the sentencing hearing he received no notice for the basis for the upward departure. Neither Rule 11 nor due process require a defendant be advised at the time of the plea that he faces an enhanced sentence. *See United States v. McElroy*, 180 Fed. App'x 82, 85 (11th Cir. 2006) (unpublished) (holding that due process does not require notice at the plea that sentence may be enhanced based on career-offender status); *United States v. Brown*,

---

[2] Reported at 395 Fed. App'x 561 (11th Cir. 2010).

526 F.3d 691, 706-07 (11th Cir. 2008) (holding that Rule 11 does not require notice at the plea that sentence may be enhanced based on career-offender status), *vacated on other grounds*, 556 U.S. 1150 (2009).

In ground two Cannion complains that the district court did not explain the reason for the upward departure and in ground three he alleges that his 292-month sentence violates the Eighth Amendment's proscription against cruel and unusual punishment because, without the upward departure, his sentence is 162 months above the calculated guideline range.  Cannion specifically raised ground two — and could have raised ground three — on direct appeal.  The circuit court rejected these claims, either explicitly or implicitly.  (Doc. 130 at 5-6):[3]

> Any error in failing to provide Cannion a written statement is harmless. The district court was not required to "explicitly discuss" its reasons for bypassing each offense level under section 4A1.3(c), *United States v. Dixon*, 71 F.3d 380, 383 (11th Cir. 1995), and "what transpired [at the sentencing hearing], taken together with the court's closing remarks . . . provides a sufficient statement of the court's reasons" for enhancing Cannion's sentence. *United States v. Parrado*, 911 F.2d 1567, 1573 (11th Cir. 1990). The district court considered the "the applicable policies and guidelines" and agreed with the government that an upward departure was necessary to address the quantity and gravity of Cannion's prior crimes that were described in the presentence investigation report. *See* U.S.S.G. §4A1.3(a)(l) & cmt. n.2(B) ("[T]he nature of . . . prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record."). Cannion does not dispute the reasonableness of the upward departure and the record contains sufficient information that would have permitted Cannion to challenge the departure on appeal. Cannion was not harmed by the lack of a written statement.

---

[3]  Also reported at 395 Fed. App'x at 562.

Reconsideration of these claims is barred by the "law of the case" doctrine. *See United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars re-litigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."). *See also United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. '[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.'") (citation omitted), *cert. denied*, 531 U.S. 1131 (2001). Because he was sentenced below the statutory maximum sentence of life imprisonment, Cannion's 292-month sentence is not violative of the Eighth Amendment proscription of cruel and unusual punishment.

## ACTUAL INNOCENCE

Cannion alleges that he is actually innocent of his 292-month sentence because he does not qualify as a career offender. The United States correctly responds (Doc. 12 at 17) that Cannion was not sentenced as a career offender. Cannion cites the inaccurate choice of words when during sentencing the prosecutor moved for the district court "to upward depart and find him to be a career offender." To clarify the request, the district court confirmed that the request was for an upward departure under Section 4A1.3 of the guidelines. (Transcript of Sentencing at 6, Doc. 113) Cannion's sentence results from an "upward departure" under Section 4A1.3 of the guidelines and not from a "career offender" enhancement under 21 U.S.C. § 851.

- 9 -

The eight-level upward departure is because the initial guideline calculation fails to account for Cannion's extensive and increasingly violent criminal history.  As the circuit court stated on appeal, "The district court considered 'the applicable policies and guidelines' and agreed with the government that an upward departure was necessary to address the quantity and gravity of Cannion's prior crimes that were described in the presentence investigation report.  *See* U.S.S.G. §4A1.3(a)(l) & cmt. n.2(B) ('[T]he nature of . . . prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record.').''  (Doc. 130 at 5-6)[4]

## INEFFECTIVE ASSISTANCE OF COUNSEL

Cannion re-characterizes some of the above grounds as claims of ineffective assistance of counsel, which is a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains,  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the

---

[4] Also reported at 395 Fed. App'x at 562.

> defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Cannion must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Cannion must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91.  Cannion cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Cannion alleges (1) that trial counsel was ineffective for not objecting based on the lack of notice for the basis for the upward departure, (2) that trial counsel was ineffective for not objecting to the district court's failure to explain the reason for the upward departure, and (3) that appellate counsel was ineffective for not asserting the lack of notice claim.  As discussed above, these claims were rejected, either explicitly or implicitly, on direct appeal.  Neither trial nor appellate counsel can render ineffective assistance based on a meritless substantive claim because the ineffective assistance of counsel requires proof of prejudice.

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.[5]  The clerk must enter a judgment against Cannion and close this case.

### DENIAL OF BOTH
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Cannion is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of

---

[5] Cannion admits that he is "ignorant to the law compared to the Government," and as a consequence, he requests a generous interpretation of his arguments.  (Doc. 18 at 6-7)  Cannion is also aware that, under *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992), *cert. denied*, 513 U.S. 1162 (1995), a court must address each claim asserted.  This order affords Cannion's papers a generous interpretation and attempts to address each claim.  Any claim not specifically addressed is denied.

appealability, Cannion must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because Cannion fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Cannion is not entitled to a certificate of appealability and he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Cannion must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on January 28, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE